## ANNA DEUTSCH, ADMINISTRATRIX, *vs.* THE CONNECTICUT COMPANY.

First Judicial District, Hartford, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

One who steps from a sidewalk diagonally across a street for about thirteen feet on to trolley-tracks, where he is struck by a trolley-car, which, at the time he left the sidewalk, was distant only seventy feet or less, and which he said he did not see, cannot be held free from contributory negligence.

Nor is recovery by his administratrix possible under the last-clear-chance doctrine; for where there is continuous concurrent negligence of the two actors in the case, each cause co-operating with the other, neither actor occupies a superior position, and the one who suffers cannot recover.

In the present case, after the trolley-car struck the plaintiff's intestate, the motorman reversed the car, and the injured man was rolled under the car as it went backward until it was brought to a stop. Death did not occur until later. The plaintiff claimed that the case should have been left to the jury to say whether the fatal injury was not caused by the later occurrence, which, being a new cause of injury inflicted by the negligence of the motorman, would not be barred as a basis of recovery by reason of the previous contributory negligence of the intestate. *Held* that since the burden of proof was on the plaintiff to show what part of the injury was inflicted during the latter, and what part during the former, occurrence, the submission of the question to the jury in the absence of any evidence thereon would have been to invite it to indulge in surmise and conjecture.

Argued January 9th—decided March 1st, 1923.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* by direction of the trial court the jury returned a verdict for the defendant, and from the judgment thereon the plaintiff appealed. *No error.*

*Mortimer H. Camp,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant).

KEELER, J.   At the conclusion of plaintiff's case defendant put in evidence a statement by plaintiff's intestate verified by the testimony of the defendant's investigator, rested and moved for a directed verdict in its favor on the ground that the plaintiff had failed to show due care on the part of the deceased, and freedom from negligence proximately and efficiently contributing to the injury.   In the argument before the Superior Court and in this court, the negligence of defendant's motorman was assumed, and had the case gone to the jury there was abundant evidence to establish this fact.

It appears that the deceased was struck by defendant's car on Main Street, New Britain, April 15th, 1920, shortly after six o'clock p. m., and received injuries from which he died April 21st, 1920.   It was daylight and the day was pleasant.   The occurrence took place on Main Street at a point a little north of the tracks of the New York, New Haven and Hartford Railroad Company, at a grade-crossing.   Main Street here runs north and south for a considerable distance. The trolley-car which struck the deceased was south bound and moving on the west track.   The deceased was struck, and carried along the pavement by the fender of the car until it stopped.   At the time the gates at the crossing were up.   The trolley-cars were required to stop before crossing the railroad tracks, and it was the custom to stop all south-bound trolley-cars a few feet north of the north crossing gate.   The trolley-car was brought to a stop on the railroad crossing eight to twelve feet south of the customary stopping place of defendant's cars.   After stopping, defendant's

motorman immediately reversed his car without leaving it. The deceased was still engaged with the car and was rolled over and over under the car and carried back to a point a few feet north of the north crossing gate when lowered. The wheel of the car did not at any time pass over decedent and most of the time his position was between the fender and the forward step of the car. No warning of the approach of the car was given by the motorman. When the car struck decedent people on the street were shouting to the motorman to stop the car. The distance between the curb and the outer rail was ten feet at a right angle, and between twelve and thirteen feet at an angle of forty-five degrees.

By reason of the collision the deceased incurred a fracture of the two bones of the lower end of the left forearm; one bone sustained a comminuted fracture; both bones were broken; he also had a fracture of the third, fourth, fifth, sixth, seventh and eighth ribs posteriorly on the left side; a fracture of the second, third, fourth, fifth, sixth and seventh ribs posteriorly on the right side. The fractures of the third, fourth and fifth ribs on the left side were comminuted fractures. The injury to the ribs was the cause of death.

All of the above facts were not in dispute, and could have been found by the jury upon the testimony in the case.

Just before the deceased crossed the part of the street between the curb and the nearest rail of the street railway, an automobile driven southerly upon the west side of the street passed by the deceased as he was about to cross. Louis Edelson, the only witness produced who observed the transaction from the time deceased left the curb until he was struck, testified that from the window of his office overlooking Main Street he saw decedent try to cross the street, take a

step or two and then return to the sidewalk, and as quick as the automobile passed by he tried to cross over the street in a slanting direction when the car came along, knocked him down, caught him and dragged him along to and upon the railroad crossing under the front of the car on the right-hand side.

The wife of the deceased, testifying to a conversation with him after his injury, said that he said to her that the automobile was "nice" past, and when asked whether her husband said that he had stepped into the street ahead of the automobile or behind it, answered, "Behind it I guess, he don't say nothing; he just say it was past, but he don't say what way; he just say he was coming [to] go cross the street and he was nice past the automobile and the car struck him and he cannot help himself." In another part of her testimony she said her husband told her—"he was cross the street, passing an automobile come and he don't see car and he cannot help himself."

Decedent in his statement made to defendant's investigator (Defendant's Exhibit 1) gives the following version of the event: "About 6:07 p. m., I was walking home from the shop on Main St. I started to cross from my right to my left side of the street opposite the Connecticut Lunch when I saw an automobile coming to the City. I jumped out of the way of the auto onto the trolley track when the trolley car struck me. I did not see the trolley car coming at all. I was watching the auto, so I did not see the car coming. I don't know how far the car was away when I got on the track. The car knocked me down and rolled me along a little. I don't know how far the car went after it struck me. It broke my left arm below the elbow. I have no other broken bones that I know of. My back hurts me. My right leg hurts me near the knee. I am sore all through my body."

The jury had it received the case could have found either Edelson's relation of the transaction or that of the deceased to be true. As bearing upon the question of his care or want thereof, it would seem to make little difference which version is correct.

Defendant moved for a directed verdict in its favor on the ground that there was not a scintilla of evidence with respect to the question of due care of the deceased. The trial court directed a verdict for defendant on that ground, basing its decision on the case of *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 84 Atl. 301, 524, and so stating.

Plaintiff contended that the facts in evidence did not show lack of due care on the part of the deceased, and further claimed that even though no conclusion could reasonably be drawn other than that her intestate was negligent, still the motorman had the last clear chance to avoid injury, and by his negligent conduct was charged with intervening negligence which was the proximate, material and essential cause of the collision.

The conclusion that the deceased used due care is not tenable in view of the evidence in the case. According to whether he went at right angles to the street or diagonally, he proceeded thereon from ten to thirteen feet when he reached the track.

According to calculations advanced by the plaintiff and apparently correct, if the car was going at the rate of fifteen miles per hour, it was about seventy feet distant from the deceased's position on the curb; if the rate of progress was ten miles per hour it was approximately forty-seven feet from him. In either case, the jury might have found that the deceased, who as appears from the evidence was a short heavy man and weighed about two hundred pounds, was proceeding at the rate of three miles per hour. All of the testimony that there

is upon this point is to the effect that he did not advance into the street at right angles to the curb, but went in a slanting direction. Whatever the idea of the situation entertained by the decedent may have been, and whatever the direction of his line of progress, he did not in fact have time to get across the track, for he was struck as soon as he reached the first rail of the track. It appeared in evidence and the jury could have found, that there was at just that time no traffic upon the west side of the street, except the passage of the one automobile and the trolley-car, and that there was nothing between him and the car to obstruct his view of the latter; also that he had a clear view of the street in the direction from which both the automobile and the car were advancing for a distance of four hundred or five hundred feet. Proper use of his eyes would certainly have resulted in his observing the approaching car. He says, however, that he did not see the car coming at all. It is apparent that he did not make use of his faculties at all. At the distance of the car, at the most seventy feet away when he started to cross, he could certainly have heard as well as have seen it. From his own statement it is evident that his attention was entirely preoccupied with the automobile.

From the above considerations the jurors would not have been justified as reasonable men in finding from the evidence that the deceased exercised due care and was free from negligence materially and essentially contributing to his injury.

While claiming that her intestate was not in fact negligent, plaintiff relies principally upon the doctrine of intervening negligence, and invokes its operation in two particulars. On the first ground it is claimed by counsel that the jury could have reasonably found that the deceased was acting upon the mistaken supposition

that he could safely cross the street as far as traffic from the north was concerned, and could also have found that the motorman saw or should have seen the attitude of the deceased, and ought to have been aware that the latter was unconscious that he was approaching a trolley-track, and that the motorman had an opportunity to prevent a collision either by stopping his car, or by giving such a signal as would warn the deceased in time for him to escape injury. It is very doubtful whether upon all the circumstances of the case the jury could have found that it was humanly possible for the motorman by anything he could have done to prevent the injury, but the decision of the matter need not be placed upon this basis, for it was claimed by defendant and evidently was held by the trial judge, that by the rule established in *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 84 Atl. 301, 524, the plaintiff cannot recover. Reliance is placed apparently upon the fourth category of possible situations as developed in the opinion at page 121, but more emphatically upon the fifth category considered upon the same and the following page. The opinion there holds that where there is continuous concurrent negligence of the two actors in the case, each cause co-operating with the other, neither party occupies a superior position in the transaction, "and the one who suffers can claim no precedence over his fellow actor or at the hands of the law."

Not only is the principle declared as above noted applicable to and decisive of the instant case, but there is a striking similarity on the facts developed in the two cases, in that in each the parties concerned, a motorman and a pedestrian, each acting negligently, continued and concurred in his negligent conduct down to the moment of disaster, and effectively helped to create the situation resulting in the injury.

The second ground upon which the plaintiff claims the benefit of this doctrine is that the motorman came to a stop and then, without going to see the condition of the injured man, backed up and thus pulled back and caused the latter to again be dragged over the pavement beneath the car; that the action is for causing the death of Deutsch, and that it may well be that the fatal injury was caused by what happened to him during the latter part of the occurrence. Plaintiff insists it should have been left to the jury to determine the fact of negligence as related to this conduct of the motorman, and to find whether or not death was caused by the injuries received while the car was going backward.

Plaintiff contends that if from the evidence in any given case it appears that a defendant by his negligence introduces any new cause of injury following but distinct from harm previously inflicted, recovery for which latter is barred by contributory negligence of a plaintiff, then if no further negligence of the latter appears, he is not barred of a recovery.

This view of the law is correct. *Isbell* v. *New York & N. H. R. Co.*, 27 Conn. 392; *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 67 Atl. 888. But it does not follow that in the instant case the testimony should have gone to the jury for its consideration of the issues just suggested. The plaintiff making these claims is bound to support them by the evidence introduced at the trial, and has the burden of proof to show what part of the injury to decedent was inflicted during the period in which the deceased was dragged backward and not during that in which he was being pushed forward. The jury might indeed have reasonably found from the evidence that the motorman was negligent in not taking note of the condition of the injured man, before reversing the direction of his car,

but there is absolutely no evidence in the case to show what part of decedent's injuries was received while he was dragged backward, and what part was inflicted on him before the car was stopped, nor that any further damage was done. To have left this latter question to the jury would have been to invite it to indulge in surmise and conjecture.

There is no error.

In this opinion the other judges concurred.