THE CLARK DAIRY, INC. *vs.* JEREMIAH J. FEELEY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued November 5th—decided December 3d, 1935.

558

*Thomas R. Robinson,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellant (plaintiff).

*Edwin H. Hall,* with whom, on the brief was *Walter A. Mulvihill,* for the appellee (defendant).

AVERY, J. This case, which arose out of a collision between plaintiff's truck and a trolley car operated by the defendant, was tried to the jury and a verdict rendered in favor of the plaintiff which the court, on defendant's motion, set aside, upon the ground that the jury could not reasonably have found that the operator of plaintiff's truck was free from contributory negligence. The only error assigned upon this appeal is the action of the court in setting aside the plaintiff's verdict. It is not controverted that there was evidence from which the jury might reasonably have found that the defendant was negligent.

Giving the most favorable construction to the plaintiff's claims which the evidence would reasonably admit, the jury might have found the essential facts as follows: At Morningside, Woodmont, Connecticut, there is a traveled way known as Yale Avenue which crosses the trolley tracks of the Connecticut Company. At the point of crossing, Yale Avenue runs approximately east and west, and a double line of trolley tracks runs approximately northeast and southwest. Westbound traffic proceeds over the two northerly rails and eastbound traffic over the two southerly. About five feet northerly from the most northerly rail and about fifteen or twenty feet from the crossing is a light pole, and three other poles are placed at intervals of one hundred feet east, the same distance

from the track. There is a station about forty feet north of the crossing on the northerly side of the west-bound tracks and about ten feet north of the northerly rail. This station is rectangular in shape, approximately eighteen feet on each side. The construction is solid half-way to the roof, which is supported by posts, so that between the solid construction and the roof and between the posts it was possible to look through the station. It is wooded all around the station on both sides of the crossing. On the north are numerous trees obstructing the view from Yale Avenue of a trolley car approaching from the northeast.

The plaintiff's truck was being operated by Morris Perlroth, delivering milk to people residing in the locality. On February 10th, 1934, at about 9:30 in the morning, while proceeding easterly on Yale Avenue, it came into collision with a Connecticut Company trolley car which was being operated in the direction from New Haven toward Bridgeport. There were but two witnesses of the collision—the truck driver and the motorman. The driver of plaintiff's truck was familiar with the intersection and knew the likelihood of trolley cars passing. He testified that as he approached the tracks, he looked to his left, the direction from which the car was approaching, at least three times; first, as he turned into Yale Avenue, then being distant about three hundred feet from the crcossing; again when about one hundred and fifty feet distant; and again at twenty feet. He did not see the car until the truck was on the track and its front wheels were over the northerly rail of the eastbound track. At that time, the trolley was eight or ten feet from him and approaching at a fast rate of speed. He heard no warning of its approach. As he entered Yale Avenue, he was proceeding at about fifteen miles an hour; as he approached the crossing, and about twenty feet

away, he slowed to ten miles; and as he crossed the track he was proceeding at eight miles. On cross-examination, he testified that in addition to the three occasions mentioned, he looked at other times and the last time, though ten feet from the track, he did not see the trolley. At a point ten feet north of the west-bound track, there is an unobstructed view of the tracks for at least eight hundred feet except for the light poles; but from points in Yale Avenue farther west than ten feet, the view of a trolley car approaching from the direction of New Haven is obstructed by numerous trees and the station.

The situation amounts to this: If the jury, from the evidence, believed that the plaintiff's driver looked up the track from a point exactly ten feet north of the northerly rail, there was nothing but the light poles to prevent his seeing an approaching trolley car; and, at the speed at which the two vehicles were proceeding, the trolley car must have been in plain sight. If, on the other hand, they believed that he looked at the other points, and on the last occasion was more than ten feet away and was, in fact, twenty feet as he had previously testified on direct examination, they might reasonably have found that his view was obstructed by the numerous trees and the trolley station, and that he had, for that reason, failed to see the approaching car. In this connection, the jury might have attached significance to the testimony of the defendant himself to the effect that although he looked twice he did not see the approaching truck until the trolley car was within about thirty feet of the intersection. The road on Yale Avenue was rough and the driver was en-deavoring to pass over the tracks in such a manner as to avoid breaking a spring or the milk bottles in the vehicle. No rule of law required the driver before crossing to be constantly on the lookout for an ap-

proaching trolley. He was required to make a reasonable use of his senses, not the utmost practicable use. He could assume that the operator of a trolley car approaching the crossing would exercise reasonable care for the protection of those upon the road. Upon all the evidence in the case, reasonable men might differ as to whether plaintiff's driver, under all the circumstances, made a reasonable use of his senses for his own protection. The question was thus one for the determination of the jury. *Fine* v. *Connecticut Co.,* 91 Conn. 327, 329, 99 Atl. 700; *Woodhull* v. *Connecticut Co.,* 100 Conn. 361, 366, 124 Atl. 42. The instant case is governed by such cases as *Woodhull* v. *Connecticut Co.,* supra, and not by such cases as *Gianotta* v. *New York, N. H. & H. R. Co.,* 98 Conn. 743, 744, 120 Atl. 560; *Richard* v. *New York, N. H. & H. R. Co.,* 104 Conn. 229, 232, 132 Atl. 451, and *Budaj* v. *Connecticut Co.,* 108 Conn. 474, 476, 143 Atl. 527, which were relied upon by the appellee, and by the trial court in setting aside the verdict. These were cases where undisputed physical facts showed that the  plaintiff could not have exercised his senses for his own protection. From the situation disclosed by the evidence in the instant case, it was possible that the plaintiff's driver, although exercising his senses reasonably, could still have failed to see the trolley car. It follows that the trial court was in error in setting aside the verdict.

There is error; the cause is remanded to the Court of Common Pleas for New Haven County with direction to enter judgment upon the verdict.

In this opinion MALTBIE, C. J., and HAINES, J., concurred; HINMAN and BANKS, Js., dissented.